SALVATORE SAIEVA, Plaintiff-Appellant, v. BUDGET RENT-A-CAR OF ROCKFORD, d/b/a Budget Rent-A-Car, *et al.*, Defendants-Appellees.

Second District    No. 2—91—0600

Opinion filed April 23, 1992.

520

Norman R. Wheeler, of Vella, Sparkman & Altamore, P.C., of Rockford (James Sparkman, of counsel), for appellant.

Williams & McCarthy, P.C., of Rockford (James P. Devine and Gary L. Hayden, of counsel), for appellee Budget Rent-A-Car of Rockford.

Daniel P. Hogan, of Ross & Hardies, of Chicago, for appellee Ford Motor Company.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Salvatore Saieva, brought this action to recover damages resulting from a one-vehicle accident that he experienced while driving a rental van on November 28, 1987. Plaintiff alleged that the accident was caused either by the negligence of defendant Budget Rent-A-Car (Budget) or by a product defect in the van that existed at the time of the van's manufacture by defendant Ford Motor Company (Ford). The circuit court of Winnebago County granted summary judgment to both defendants, and plaintiff made a timely appeal. We affirm.

### THE ACCIDENT

According to plaintiff's deposition testimony, he rented a 1987 Ford Econoline 250 cargo van from Budget on November 28, 1987, to move some personal belongings from his home to his parents' home. By late evening, he had driven three round trips in the van, each round trip being approximately six miles. The rental van had been in service for over a year and had logged over 22,000 miles. At approximately 9:15 p.m., plaintiff was driving the van south on Montague Road, a rural two-lane highway which was described as bumpy, wet, and slick, at between 55 and 65 miles per hour. It was either raining or the rain had just stopped. Just before the accident occurred, plaintiff had braked suddenly to avoid a deer in the road. About a half mile farther down the road on a straight section, the rear end of the van began fishtailing. The van began to spin, eventually leaving the road and striking a fence in the ditch, injuring plaintiff and damaging the right rear portion of the van.

The accident was observed by John Glasgow, plaintiff's brother-in-law, who was following plaintiff in another vehicle. According to Glasgow's deposition testimony, plaintiff was driving at speeds of up to 65 miles per hour. Glasgow further stated that the brake lights were not illuminated when the van started to skid, although the brake lights had been working prior to the accident. Robert Wickwire, plaintiff's father-in-law, arrived at the scene immediately following the accident.

Both Glasgow and Wickwire stated in their depositions that when the wrecker towed the van from the ditch, the right rear wheel was skidding and appeared to be locked up. Illinois State Trooper Leland Files stated in his deposition that he issued a citation for defective brakes based on his interview with plaintiff and the fact that the right rear wheel of the van was locked.

Sandra Johnson, manager of the local Budget agency where plaintiff rented the van, submitted a sworn affidavit with the following information. Budget brought the van to Rock River Ford, a Ford dealership in Rockford, on the Monday following the accident. A repair ticket dated November 30, 1987, two days after the accident (No. 60198, van mileage 22,954), indicates that acting upon Budget's concern about a possible lockup problem with the rear brakes, the rear brakes were cleaned, lubed and adjusted, and that the van was road tested. Budget was charged $18 for that repair. Another repair ticket dated December 11, 1987, 13 days after the accident (No. 60325, van mileage 22,965), indicates that again acting upon Budget's concern over the rear brakes possibly locking up, the rear brake shoes were replaced and the emergency brake cable control was repaired. The following was written at the bottom of the repair ticket: "Professional Opinion[:] Vehicle has been driven with Emerg. Brake On[,] per Don Lucas." The record is unclear as to who Don Lucas is. Budget was charged $111.30 for that repair. Johnson also stated in her affidavit that "[a]t no time prior to the accident was there any evidence of any defect or problem with the [van's] braking system." Budget put the van back in rental service, eventually selling the van on March 5, 1988.

An affidavit from Roland L. Ruhl, a mechanical engineer and plaintiff's expert, was submitted to the trial court in support of plaintiff's motion to deny defendants' motions for summary judgment. Ford correctly notes in its brief that Ruhl never actually examined the van. Ruhl made several conclusions concerning the van and the accident, the first of which was that leaving the emergency brake on could not have caused this accident. Ruhl reasoned that the design of the emergency brake cable is such as to provide equal cable tension to each shoe set and that, absent defective shoe adjustment or the presence of a foreign matter, no preference should exist for just one shoe set to lock against its drum. He also reasoned that if the emergency brake was on, seizure of both rear shoes should occur initially, not later after they heat up and become less effective. Ruhl opined that seizure of the right rear shoe will cause the vehicle to pull to the right and that any left steer by the driver to correct for the pull will set up

sufficient conditions for a counterclockwise spin on wet pavement. Ruhl stated that a properly adjusted and set emergency brake should prevent the vehicle from moving to start with or make it virtually impossible to drive the vehicle normally. Ruhl opined that the "[m]ajor likely causes of brake seizure include improperly adjusted brake shoes, and foreign matter on the shoe drum interface[; a] leaking rear axle seal is a likely candidate."

## PROCEDURAL HISTORY

Plaintiff filed his first complaint on December 29, 1988, against Budget. Count I of that complaint was a negligence claim while count II was a strict liability claim. The trial court granted Budget's motion to dismiss count I, apparently because the trial court agreed with Budget that the allegations in count I were conclusory. The trial court continued Budget's motion to dismiss count II, which invoked the protection of the "seller's exception" provided by section 2—621 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—621) (allowing for dismissal of a strict liability product claim against a nonmanufacturer upon its certifying the identity of product manufacturer), until such time as Ford "shall have answered or been required to answer" the complaint.

Plaintiff filed an amended complaint on February 6, 1989, which consisted of three counts: count I was a negligence claim against Budget, count II was a strict liability claim against Budget, and count III was a strict liability claim against Ford. On June 1, 1990, the trial court granted Budget's motion to dismiss count II of the amended complaint, apparently based on Budget's prior section 2—621 motion. By that date, Budget had certified that Ford manufactured the van, Ford had made an appearance and Ford had admitted that it manufactured the van. On July 6, 1990, the trial court denied plaintiff's motion to reconsider its dismissal of count II.

During February and March 1990, Budget and Ford filed motions for summary judgment concerning counts I and III, respectively. The trial court granted both motions on September 24, 1990. On May 6, 1991, the trial court denied plaintiff's motion to reconsider. On May 7, 1991, the trial court denied plaintiff's motion to vacate the order granting summary judgment in favor of Budget and denied plaintiff's motion to file a second amended complaint against Budget.

Plaintiff made this timely appeal. Plaintiff argues that the trial court erred (1) in its dismissal of plaintiff's strict liability claim against Budget; (2) in its grant of summary judgment to Budget on plaintiff's negligence claim; and (3) in its grant of summary judgment

to Ford on plaintiff's strict liability claim. We will address each issue separately.

### PLAINTIFF'S STRICT LIABILITY CLAIM AGAINST BUDGET

At issue is whether the trial court erred in its dismissal, pursuant to section 2—621 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—621), of plaintiff's strict liability claim against Budget. Plaintiff argues that strict liability claims have long been recognized as applying to car rental agencies, citing *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272. Plaintiff further argues that the trial court here employed an overly broad application of section 2—621, citing *Bastian v. Wausau Homes, Inc.* (N.D. Ill. 1986), 638 F. Supp. 1325. Budget argues that the trial court properly applied section 2—621, since Ford, the manufacturer of the van, had at that point become a party to the suit.

We first examine section 2—621 (Ill. Rev. Stat. 1989, ch. 110, par. 2—621). This court has stated that section 2—621, known as the "seller's exception," allows for the dismissal of a nonmanufacturer defendant from a strict liability product claim upon its certifying the correct identity of the manufacturer of the allegedly defective product. (*Logan v. West Coast Cycle Supply Co.* (1990), 197 Ill. App. 3d 185, 190; see *Cherry v. Siemans Medical Systems, Inc.* (1990), 206 Ill. App. 3d 1055, 1060-61.) The Illinois Supreme Court summarized section 2—621 as follows:

> "Section 2—621 provides a method by which a nonmanufacturer may be dismissed from a product liability action at an early stage in the proceedings and therefore avoid incurring the costs that arise from defending such actions. The statute provides that a nonmanufacturer 'shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage.' (Ill. Rev. Stat. 1985, ch. 110, par. 2—621(a).) Once the product manufacturer has been sued and has answered or otherwise pleaded, the trial court is to dismiss the certifying defendants. (Ill. Rev. Stat. 1985, ch. 110, par. 2—621(b).) A defendant is not to be dismissed from the action, however, if it shares some responsibility for the creation of the defect in the product or had actual knowledge of its existence. (Ill. Rev. Stat. 1985, ch. 110, par. 2—621(c).) Moreover, when an action against the product manufacturer would be impossible or unavailing, the plaintiff may at any time move for reinstate-

ment of a previously dismissed defendant." *Kellerman v. Crowe* (1987), 119 Ill. 2d 111, 113-14.

In *Logan*, this court held that "[o]n its face, section 2—621 does not require anything more than certification of the correct identity of the [product] manufacturer." (*Logan*, 197 Ill. App. 3d at 191.) We then held that to overcome a section 2—621 motion, the plaintiff must show that the "certifying defendant exercised some significant control over the design or manufacture of the product, or had actual knowledge of, or created, the defect." *Logan*, 197 Ill. App. 3d at 191, citing Ill. Rev. Stat. 1987, ch. 110, pars. 2—621(c)(1) through (c)(3).

■ Plaintiff's argument that he should be able to maintain a strict liability product action against a downstream seller, Budget, who has properly certified the identity of the product manufacturer who is now a party to the suit (Ford) is simply contrary to the language of section 2—621 and cases which have interpreted it. While it is true that all entities in the distributive stream of an allegedly defective product may be subject to strict liability in tort (*Kellerman*, 119 Ill. 2d at 116; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 617), the purpose of section 2—621 is to allow a nonmanufacturing defendant, who has not been shown to have created or contributed to the alleged defect, to defer liability upstream to the ultimate wrongdoer, the manufacturer. (*Cherry*, 206 Ill. App. 3d at 1061; *Logan*, 197 Ill. App. 3d at 190.) We believe that the trial court properly dismissed plaintiff's strict liability claim against Budget pursuant to section 2—621.

■ Plaintiff asserts that Budget "had control over the automobile" and thus should not be able to be dismissed from the strict liability claim under section 2—621, citing *Bastian v. Wausau Homes, Inc.* (N.D. Ill. 1986), 638 F. Supp. 1325. Plaintiff's argument misconstrues both section 2—621 and the holding in *Bastian*. Section 2—621(c) defines those situations when a nonmanufacturer defendant, who has otherwise complied with the statute, will not be dismissed. We find that none of the situations outlined in section 2—621(c) apply here. Count II of plaintiff's amended complaint does allege that Budget had exclusive control or possession of the van prior to and after plaintiff's rental period. However, plaintiff does not allege in that count that Budget exercised significant control over the design or manufacture of the van, provided any instructions or warnings to the manufacturer (Ford), or had actual knowledge of, or created, the defect. See *Filippini v. Ford Motor Co.* (N.D. Ill. 1986), 110 F.R.D. 131, 134-35 (Federal court applied Illinois law, finding that car dealer was not an indispensable party to the product liability suit, in large part because

the dealer could have easily invoked section 2—621 and been dismissed from the suit).

Plaintiff's reliance on *Bastian* is misplaced. In *Bastian*, plaintiff's prefabricated home was destroyed by fire. The home was heated by electrical baseboard heaters which plaintiff's expert testified is where the fire began. Contrary to the situation here, the nonmanufacturer defendant in *Bastian*, the home builder (Wausau Homes), failed to comply with the section 2—621 requirement of an *affidavit* certifying the identity of the baseboard heater manufacturer. Instead, the home builder supplied a mere deposition extract. Furthermore, the court in *Bastian* noted that to dismiss the nonmanufacturer defendant would in essence "ignore the difficult factual questions of causation *** and decide now that the true defective product was the heater." (*Bastian*, 638 F. Supp. at 1327.) There is no dispute here that the allegedly defective product is the Ford van. We therefore agree with Budget that *Bastian* is not controlling here.

Plaintiff's reliance on *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, is also misplaced. The court there extended strict product liability to lessors of vehicles, based on the earlier *Suvada* (32 Ill. 2d 612) decision rationale of protecting the injured party rather than the downstream seller who reaped the profit and created the risk. (*Galluccio*, 1 Ill. App. 3d at 278-79.) However, *Galluccio* did not address the application of section 2—621, which was enacted in 1979, eight years after the decision. Having previously found no error in the trial court's dismissal of plaintiff's strict liability claim against Budget pursuant to the requirements of section 2—621, we conclude that *Galluccio* is not dispositive here.

### PLAINTIFF'S NEGLIGENCE CLAIM AGAINST BUDGET

At issue is whether the trial court erred by granting summary judgment to Budget on plaintiff's negligence claim against Budget.

"While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Summary judgment is proper only when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842.) The evidence in the record must be construed strongly against the movant and liberally in

favor of the opponent. (*Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 74, 80-81.) To prevent the entry of summary judgment, an opponent need not prove his case at this preliminary stage, but must present facts sufficient to support the elements of his claim. (*Kempes v. Dunlop Tire & Rubber Corp.* (1989), 192 Ill. App. 3d 209, 214.) These elements may be proved inferentially, by either direct or circumstantial evidence. (*Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 33.) However, "a product liability action cannot be decided on mere speculation, guess or conjecture[;] *** the circumstances shown must justify an inference of probability as distinguished from mere possibility." *Consolino*, 127 Ill. App. 3d at 33; see *Varady v. Guardian Co.* (1987), 153 Ill. App. 3d 1062, 1067.

Plaintiff makes two arguments: (1) a genuine issue of material fact existed as to whether Budget was negligent under a *res ipsa loquitur* theory, which plaintiff claims he adequately set forth in his complaint, thus preventing the entry of summary judgment in Budget's favor; and (2) the trial court erred by denying plaintiff's motion to amend his pleadings after the court granted summary judgment to Budget, citing section 2—1005(g) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)). Budget responds that the summary judgment order in its favor should be affirmed because plaintiff failed to prove a specific defect, citing *Strotman v. K.C. Summers Buick, Inc.* (1986), 141 Ill. App. 3d 8, and because the record does not support the application of the doctrine of *res ipsa loquitur*.

■ We initially note our agreement with Budget's argument that plaintiff has failed to prove a specific defect attributable to Budget, or a defect which proper inspection or warning by Budget would have alleviated. (See *Strotman v. K.C. Summers Buick, Inc.* (1986), 141 Ill. App. 3d 8, 10.) We do not believe that plaintiff has established an adequate inference of negligence on Budget's part to overcome Budget's motion for summary judgment.

■ Next, we consider plaintiff's argument that his complaint adequately stated a cause of action in negligence against Budget based on a *res ipsa loquitur* theory such that summary judgment for Budget was improper. We note for clarification that plaintiff's amended complaint does not mention the theory. Plaintiff first invoked the theory when he asked the trial court to reconsider its grant of summary judgment to Budget. The purpose of the *res ipsa loquitur* doctrine is to allow proof of negligence by circumstantial evidence when the direct evidence concerning the cause of the injury is primarily within the knowledge and control of defendant. (*Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App.

3d 856, 862; see *Dyback v. Weber* (1986), 114 Ill. 2d 232, 238.) To prevail under a *res ipsa loquitur* theory, plaintiff must establish: "(1) that the occurrence is one that ordinarily does not occur in the absence of negligence and (2) that the defendant had exclusive control of the instrumentality that caused the injury." (*Dyback*, 114 Ill. 2d at 242.) Budget argues that the record fails to establish the existence of either element. We agree.

■ We find no evidence in the record to support plaintiff's proposition that the accident could not have occurred absent negligence on the part of Budget. We find *Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, cited by Budget, instructive in this regard. In that case, a high school student was injured while using an allegedly defective electric frying pan. The court concluded, in part:

> "[T]he [*res ipsa loquitur*] doctrine is inapplicable because the facts as alleged do not necessarily infer [*sic*] negligence on the part of defendants. There are several possible causes for the accident apart from any negligence by defendants; for example, the student using the frying pan could have been negligent, or the frying pan may have had an inherent defect for which the manufacturer would potentially be liable, or there may have been a defect in the electrical system for which the power company, not the school, would potentially be liable." (*Rinck*, 82 Ill. App. 3d at 862.)

Likewise, in this case, there is simply no evidence which would indicate that the alleged defect was negligently caused by Budget or that Budget negligently failed to discover the alleged defect. Furthermore, there are several possible causes for the accident apart from any negligence by Budget; for example, plaintiff could have inadvertently caused the van to spin off the rain-slicked road and into the ditch, and the right rear wheel could have been damaged in the process of the accident.

Furthermore, we do not believe that it can be said that Budget had "exclusive control of the instrumentality that caused the injury." Budget rented the van to plaintiff, and when plaintiff drove the van out of Budget's parking lot, Budget lost control of the van.

Plaintiff's primary authority for his proposition that Budget had the requisite control of the van to support a *res ipsa loquitur* theory, *McGuckin v. Chicago Union Station* (1989), 191 Ill. App. 3d 982, is distinguishable. In that case, the executor of the estate of a person killed in a fire at the railroad station brought suit. Union Station appealed the trial court's denial of its motion for a directed verdict on a

*res ipsa loquitur* count. The appellate court affirmed, finding that the plaintiff had adequately established the two requisite elements for a *res ipsa loquitur* theory. (*McGuckin,* 191 Ill. App. 3d at 997-1000.) In particular, the court held that "physical control" is not necessary if the "instrumentality *** is one which it is defendant's responsibility to maintain at *all times.*" (Emphasis added.) (*McGuckin,* 191 Ill. App. 3d at 999.) Contrary to that case, where Union Station was responsible for maintaining the premises at all times, Budget lost exclusive control of the van as soon as plaintiff drove it out of its parking lot.

Plaintiff also argues in his reply brief that the control element of the *res ipsa loquitur* doctrine is satisfied even if this court determines that Budget did not have exclusive control of the van, citing the Restatement (Second) of Torts §328D, Comment *g,* at 161 (1965). We agree with plaintiff that the basic import of Comment *g* is that the control element can be established if the probable cause of the accident is one which the defendant was under a duty to the plaintiff to anticipate or guard against. However, we fail to see how Comment *g* applies to the facts of this case since plaintiff has not adequately established a probable cause for the accident; he has not pled and proved a causative defect in the van of which Budget knew or should have known. In other cases which have applied Comment *g,* there has been an established probable cause of the accident or injury. See, *e.g., Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266; *McGuckin,* 191 Ill. App. 3d 982.

We therefore conclude that the trial court did not err in granting summary judgment to Budget on plaintiff's negligence claim.

We next consider plaintiff's argument that the trial court erred by not allowing him to file a third amended complaint against Budget for negligence. Plaintiff's proposed amendment was apparently based on a *res ipsa loquitur* theory. Section 2—1005(g) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)) provides: "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." A court of review will not reverse the denial of a motion to amend absent a manifest abuse of discretion. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273-74.) In order to determine whether the trial court has abused its discretion, we must examine the following four factors: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleadings could be identified." *Loyola*

*Academy*, 146 Ill. 2d at 273; see *In re Estate of Hopkins* (1991), 214 Ill. App. 3d 427, 439.

■ Having previously concluded that the doctrine of *res ipsa loquitur* does not apply to the facts of the case, we believe that the proposed amendment would not cure the defective pleading. (Compare *Siebert v. Continental Oil Co.* (1987), 161 Ill. App. 3d 891, 895-96 (amended complaint would have rectified defect of previous complaint).) While we do not believe that either Budget or Ford would be prejudiced or surprised by the proposed amendment, we are troubled by the fact that plaintiff waited over 29 months before attempting to amend his complaint against Budget to include a *res ipsa loquitur* theory of negligence. We do not believe his motion to amend was timely. Finally, we note that plaintiff could have included the proposed amendment when he filed his first amended complaint, over a year earlier, on February 6, 1989. We conclude that the trial court did not abuse its discretion in denying plaintiff's motion to file a second amended complaint.

### PLAINTIFF'S STRICT LIABILITY CLAIM AGAINST FORD

At issue is whether the trial court erred by granting summary judgment to Ford on plaintiff's strict liability claim against Ford. Plaintiff first argues that he established a *prima facie* case of strict liability against Ford and that the trial court therefore erred by granting summary judgment to Ford. Alternatively, plaintiff argues that he need not establish a *prima facie* case at the pretrial stage, citing *Bennett v. Raag* (1982), 103 Ill. App. 3d 321. Ford counters that the trial court properly granted summary judgment in its favor because plaintiff failed to produce any evidence of a defect attributable to Ford.

While we agree with plaintiff that he need not prove his *prima facie* case at this pretrial stage (*Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 325), a recitation of the requisite elements provides a framework for our discussion. To establish a *prima facie* case in strict liability, a plaintiff must plead and prove three elements: (1) that an injury resulted from a condition in the product; (2) the condition of the product was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturer's control. *Norman v. Ford Motor Co.* (1987), 160 Ill. App. 3d 1037, 1041; *D'Olier v. General Motors Corp.* (1986), 145 Ill. App. 3d 543, 547.

Plaintiff argues that this case is similar to *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, where the plaintiff alleged that the brake system on a Ford vehicle had failed, causing an accident. In

that case, the plaintiff and his daughter testified as to the brakes malfunctioning before the accident. Experts from both parties examined the vehicle's brake system following the accident and were unable to find any defect which would cause a malfunction. After a jury verdict for the plaintiff, the defendants appealed. The Illinois Supreme Court affirmed, stating:

> "A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [it's] nature and intended function.' " *Tweedy*, 64 Ill. 2d at 574.

We do not agree that this case is similar to *Tweedy*, or the other product liability cases cited by plaintiff. Our review of the record indicates that plaintiff offered no evidence to establish that a defect existed in the van when it left the control of Ford. The evidence presented by plaintiff only raised possibilities for the cause of the accident, not a probability. (See *D'Olier*, 145 Ill. App. 3d at 547.) Whereas in *Tweedy* the court noted that the plaintiff was driving at a reasonable rate of speed on dry and familiar roads, all of which tended to negate driver error as a reasonable secondary cause, driver error remains a possible secondary cause in this case. The locked right rear wheel after the accident could have very well been a product of the accident. We do not place great weight on the State trooper's citation for defective brakes, since he based the issuance of the citation on an interview with plaintiff and the existence of the locked wheel, facts that we have available as well. Furthermore, Mr. Ruhl's report is based on speculation since he never examined the van. The record supports the reasonable inference that the plaintiff simply lost control of the van because he was driving at an excessive speed on a dark, wet and bumpy rural highway.

We find *Norman v. Ford Motor Co.* (1987), 160 Ill. App. 3d 1037, to be analogous to the instant case. In *Norman*, the backseat of plaintiffs' car began to smolder while they were driving. They brought a strict liability action against Ford, alleging that the exhaust system, catalytic converter and/or safety devices in the car were defective. The car was over a year old and had been driven approximately 18,000 miles. The plaintiffs had no direct evidence of a defect in the car, which was later sold at an auction, and did not present any evidence that the allegedly defective parts of the vehicle had been examined. The trial court granted Ford's motion for summary judgment. The appellate court affirmed, holding that plaintiffs had failed to pro-

duce sufficient evidence of the existence of a defect attributable to Ford when the vehicle left the control of Ford. (*Norman*, 160 Ill. App. 3d at 1042-43.) We make the same holding here. We find no error in the trial court's order granting summary judgment to Ford on plaintiff's strict liability claim.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT and GEIGER, JJ., concur.