NATIONAL SERVICE INDUSTRIES,
INC., Plaintiff and Appellant,

v.

B.W. NORTON MANUFACTURING COM-
PANY, INC.; and International Ma-
chine & Tool Works, Inc., Defendants
and Appellee.

No. 960653–CA.

Court of Appeals of Utah.

April 24, 1997.

Todd S. Winegar and Wade S. Winegar, Salt Lake City, for Plaintiff and Appellant.

Paul M. Belnap, Robert L. Janicki, and Michael S. Johnson, Salt Lake City, for Defendants and Appellees.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant National Service Industries (NSI) appeals the trial court's summary judgment in favor of appellee Norton Manufacturing (Norton). NSI claims the trial court erred by ruling that (1) NSI's apportionment claims against alleged joint tortfeasor Norton, brought after resolution of the underlying tort action, were essentially claims for contribution which are barred by Utah's Liability Reform Act, and (2) NSI's claims for indemnity were barred by res judicata. In addition, NSI requests that this court adopt a cause of action for "comparative implied indemnity." We affirm.

## BACKGROUND

Sherman Packer's eye was injured when he opened a pressurized container of degreaser soap and its contents struck him in the face. Packer purchased the product from NSI, and NSI had purchased the container from Norton. Accordingly, Packer sued both NSI and Norton for his injuries (*Packer* litigation). In that action, NSI and Norton were codefendants, but neither filed a cross-claim against the other.

Norton filed a motion for summary judgment, claiming it bore no liability for Pack-

er's injuries. Packer did not oppose this motion. Instead, NSI sought to oppose the motion, and Norton objected, claiming NSI lacked standing. Although skeptical that NSI had standing, the trial court considered the motion, heard arguments, and granted summary judgment in favor of Norton on the merits (the *Packer* judgment). Because Norton had been found, as a matter of law, not liable for any of Packer's injuries, the trial court advised NSI that Norton's fault could not be considered by the jury at trial between Packer and NSI. NSI appealed to this court, and while that appeal was pending, settled the case with Packer.

On appeal, this court held that NSI lacked standing to challenge Norton's summary judgment against Packer. *See Packer v. National Serv. Indus., Inc.,* 909 P.2d 1277, 1278 (Utah.Ct.App.1996). The court noted that NSI could have "protected its potential claim against Norton under Utah Rule of Civil Procedure 13(f)." *Id.* Because NSI had no right to oppose Norton's summary judgment motion, the court concluded NSI similarly had no standing to appeal the grant of that motion. *Id.* Therefore, the court refused to address the merits of NSI's appeal and dismissed the case. *Id.*

After this court dismissed NSI's appeal of Norton's summary judgment against Packer, NSI filed a separate action against Norton. This action was assigned to a different trial judge than had presided over the *Packer* litigation. NSI asserted four causes of action, labeled as follows: (1) "Tort Reform Act, Proportionate Fault"; (2) "Negligence"; (3) "Breach of Warranty"; and (4) "Strict Liability." Norton filed a motion to dismiss, arguing that NSI's first and second causes of action essentially requested contribution; that contribution was barred by the Utah Liability Reform Act; and that, therefore, these causes of action failed to state claims for which relief could be granted. Furthermore, Norton argued that NSI's third and fourth causes of action essentially requested indemnification and that res judicata barred any indemnification claims because of the *Packer* judgment in favor of Norton.

After hearing arguments on these issues, the trial court treated Norton's motion as one for summary judgment and granted judgment in favor of Norton. The trial court agreed with Norton that NSI's contribution claims failed to state an appropriate claim for which relief could be granted. It also agreed that res judicata barred NSI's indemnification claims. The trial court did not consider the merits of NSI's potential claims against Norton. This appeal followed.

## ISSUE

We address the following dispositive issue: After having settled a tort action with the plaintiff, can NSI bring a separate action to recover an amount it alleges represents Norton's proportion of fault as a joint tortfeasor?[1]

## STANDARD OF REVIEW

■ "A trial court's decision to grant or deny a motion for summary judgment is a legal one and will be reviewed for correctness." *Salt Lake City v. Silver Fork Pipeline,* 913 P.2d 731, 733 (Utah 1995). Accordingly, this court will grant no deference to the trial court's legal conclusions. *See id.*

## ANALYSIS

NSI seeks to bring suit against Norton to recover a portion of the tort settlement NSI paid to Packer. NSI argues it may recover from Norton an amount which allegedly represents Norton's proportion of fault through an action either for "reimbursement" or for "comparative implied indemnity," or in the alternative, that it may recover the entire amount paid to Packer, through an action for implied indemnity. Norton concedes NSI could have cross-claimed to have Norton's proportion of fault determined while NSI and Norton were codefendants in the original suit with Packer. Norton maintains, however, that the Utah Liability Reform Act (the Act) specifically prohibits actions for "contribution," and accordingly, NSI may not sue to recover for damages it has already paid,

---

1. Because of our disposition of this issue, we do not address whether the trial court correctly ruled that res judicata barred NSI's indemnity claims.

since that would essentially amount to a contribution claim. Thus, the parties here do not dispute that an "apportionment" claim existed between them at some point. *Cf. Sullivan v. Scoular Grain Co.*, 853 P.2d 877, 884 (Utah 1993) (holding all persons allegedly bearing fault for a tort, even if immune from suit, must be included in "apportionment" of fault among tortfeasor codefendants). Rather, they dispute *when* such an apportionment claim may be brought.

### Joint and Several Liability, Contribution, and Indemnity

■ At common law, multiple tortfeasors were jointly and severally liable. *See, e.g., Cruz v. Montoya*, 660 P.2d 723, 728 (Utah 1983); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 50, at 336 (5th ed.1984). As such, a tortfeasor was potentially liable for the entire amount of a plaintiff's damages, irrespective of what proportion of fault was actually attributable to that individual tortfeasor as opposed to another joint tortfeasor. *See, e.g., Brunyer v. Salt Lake County*, 551 P.2d 521, 523–24 (Utah 1976) (Ellett, J., dissenting); Keeton et al., *supra*, § 50, at 336–38.

■ "Contribution" is a method for tortfeasors forced to pay damages greater than their proportion of fault to recover from other joint tortfeasors in a separate action. *See, e.g., Brunyer*, 551 P.2d at 522; Restatement (Second) of Torts § 886A (1977); Keeton et al., *supra*, § 50, at 336–38. However, at common law, contribution suits were barred, thus making tortfeasors potentially liable for all of a plaintiff's damages—through joint and several liability—with no recourse for redistributing their loss among other joint tortfeasors. *See, e.g., Brunyer*, 551 P.2d at 522–23 (Ellett, J., dissenting); Keeton et al., *supra*, § 50, at 336.

■ The doctrine of "implied indemnity" arose from judicial efforts to ameliorate the harsh effects of the rule prohibiting contribution among joint tortfeasors. *See, e.g., American Nat'l Bank & Trust Co. v. Columbus–Cuneo–Cabrini Med. Ctr.*, 154 Ill.2d 347, 181 Ill.Dec. 917, 919, 609 N.E.2d 285, 287 (1992); *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788, 800 (1980); Restatement

(Second) of Torts § 886B cmt. *l* (1977). Implied indemnity is a branch of the doctrine of "indemnity," a doctrine which requires "another to reimburse *in full* one who has discharged a common liability." Keeton, et al., *supra*, § 51, at 341 (emphasis added); *see also* Restatement (Second) of Torts § 886B & cmt. a (1977). A right to indemnification may arise from a number of sources, including express contract or statute. *See, e.g., Hanover Ltd. v. Cessna Aircraft, Co.*, 758 P.2d 443, 445–46 (Utah.Ct.App.1988). An implied right to indemnity arises by operation of law. *See, e.g., id.* Thus, traditionally, "indemnity" involved full reimbursement whereas "contribution" involved splitting the damages among the joint tortfeasors. *See, e.g.*, Restatement (Second) of Torts § 886B cmt. a (1977).

As noted by one commentator, however, "[b]ecause of either confusion or deliberate departure from prevailing usage, ... there are decisions in which full reimbursement has been allowed under the name of contribution, or some form of distribution has been allowed under the name of indemnity." Keeton et al., *supra*, § 51, at 341. Moreover, the doctrine of indemnity has branched into various, apparently inconsistent lines of cases such that "it is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." *Id.* § 51, at 343 (footnotes omitted).

■ The important, common foundation of both contribution and implied indemnity principles, however, is that they attempt to ensure that parties are not held unfairly liable to an extent greater than their degree of fault. Because tortfeasors were jointly and severally liable, joint tortfeasors could achieve fair distribution of loss, in many cases, only through separate suits among themselves for contribution or implied indemnity.

### The Liability Reform Act

In 1986, the Utah Legislature passed the Liability Reform Act, which abolished joint and several liability by providing that "[n]o defendant is liable to any person seeking recovery for any amount in excess of the

proportion of fault attributed to that defendant." Utah Code Ann. § 78–27–38 (1996) (originally enacted as Liability Reform Act, ch. 199, § 2, 1986 Utah Laws 470, 471). One primary driving force behind the Liability Reform Act was "'basic fairness.'" *Sullivan,* 853 P.2d at 880 (quoting Tape of Utah Senate Floor Debates, 46th Leg.1986, Gen. Sess. (Feb. 12, 1986)). As noted by one Utah senator during the debate on the bill, "'The defendant ought to be on the hook only for its own percentage of damages, but ought not be the guarantor for everyone else's damages.'" *Id.*

Under this scheme, a joint tortfeasor defendant may join any other party who "may have caused or contributed to the injury or damage for which recovery is sought, for the purpose of having determined their respective proportions of fault." Utah Code Ann. § 78–27–41(1) (1996). It follows that a joint tortfeasor codefendant may cross-claim against other joint tortfeasor codefendants under Rule 13(f) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 13(f) (stating a "cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."); *see also Packer v. National Serv. Indus.,* 909 P.2d 1277, 1278 (Utah.Ct. App.1996); *Tietz v. Blackner,* 157 F.R.D. 510, 513–14 (D.Utah 1994) (allowing tortfeasor defendant to implead alleged joint tortfeasor on basis of an existing "apportionment" claim). Under *Packer,* joint tortfeasor codefendants must assert claims against each other in order to have standing to protect their rights against each other in the underlying action. *See Packer,* 909 P.2d at 1278.

■ The Act also provides that "[a] defendant is not entitled to *contribution* from any other person." Utah Code Ann. § 78–27–40(2) (1996) (emphasis added). Thus, the Act's plain language bans contribution suits. This ban comports with the overall statutory scheme which abolishes joint and several liability and renders tortfeasors liable only to the extent of their own proportion of fault. Indeed, with the abrogation of joint and several liability, there remains no need for suits to redistribute loss among joint tortfeasors because no party will in any case be liable for more than its degree of fault in the underlying tort action.

■ Similarly, there remains no need to enlist alternative labels for causes of action, disguised as alternative theories, to ensure that liability is distributed fairly among joint tortfeasors. *Cf.* Restatement (Second) of Torts § 886A cmt. *l* (1977) ("In a state following comparative contribution, or contribution according to the comparative fault of the parties, contribution may tend to merge with indemnity, and the technical distinctions of indemnity may become less important.... The eventual outcome is likely to be a single remedy based on comparative fault."); Keeton et al., *supra,* § 51, at 343 ("[A]ny other rule that gives one tortious actor a right of indemnity from another tortious actor, may be held inapplicable after the principle of comparative fault has been adopted."). In applying this provision, we must not become mired in semantics or allow parties to circumvent the Act's clear ban on contribution suits merely by relabeling their causes of action. *Cf. Madsen v. Borthick,* 658 P.2d 627, 631 (Utah 1983) ("An important legal consequence should not be at the mercy of semantics."). Because the Act prohibits separate actions for contribution, it must also then prohibit any action separate from the underlying tort action which seeks to redistribute loss based on degree of fault. *Cf. Black's Law Dictionary* 328 (6th ed.1990) (defining "contribution" as "[r]ight of one who has discharged a common liability to recover of another also liable.... Under [the] principle of 'contribution,' a tort-feasor against whom a judgment is rendered is entitled to recover proportional shares of judgment from other joint tortfeasors whose negligence contributed to the injury and who were also liable to the plaintiff.").

■ Accordingly, notwithstanding any dicta in *Packer* to the contrary, the Act prevents NSI from now suing Norton for reimbursement of any portion of the liability it has discharged. NSI's "reimbursement" and "indemnification" causes of action in the instant case are indistinguishable from a contribution suit inasmuch as they seek to redistribute liability based on degree of fault.

NSI may not evade the Act's ban on contribution suits by bringing what are in substance contribution causes of action renamed as "reimbursement" or "implied indemnity" or even "comparative implied indemnity" actions. To preserve the right to litigate Norton's liability, NSI must have filed a cross-claim against Norton during the underlying tort action against Packer.

 In reaching our conclusion, we recognize that prohibiting subsequent apportionment suits essentially requires joint tortfeasor codefendants to raise cross-claims against each other in the underlying tort action or else such claims may be lost. As such, cross-claims for apportionment among joint tortfeasor codefendants are mandatory.[2] *Cf.* Kan. Stat. Ann. § 60–213(g) (1994) (making cross-claims between joint tortfeasor codefendants mandatory). This conflicts with the general rule, reflected in Rule 13(f) of the Utah Rules of Civil Procedure, that cross-claims are permissive and may be brought in subsequent actions. *See* Utah R. Civ. P. 13(f) ("A pleading *may* state as a cross-claim any claim by one party against a co-party ....") (emphasis added); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 13.31 (3d ed.1997) (discussing general rule under federal equivalent of rule 13(f) that cross-claims are generally permissive); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1431, at 236–37 (1990) (same). Nevertheless, to the extent the Act and Rule 13(f) conflict, the Act controls for purposes of preserving substantive rights under the Act.

2. We note that by declaring apportionment claims mandatory in the underlying tort action, we do not mean that tortfeasor codefendants must file cross-claims to have the other's fault determined in every case. Under the Act, the trier of fact must take other tortfeasor's culpability into consideration when making any damages awards, even if a cross-claim is not or could not be filed. *See Sullivan,* 853 P.2d at 880–81 (holding the Act requires all possibly liable parties be considered in apportioning fault, even parties otherwise immune from suit); *cf. Turner v. Nelson,* 872 P.2d 1021, 1026 (Utah 1994) (refusing to consider whether the Act requires that any individual listed on special verdict form for apportionment purposes be actual party to litigation). Thus, tortfeasor codefendants do not necessarily need to file a cross-claim to ensure that any other tortfeasor's culpability is determined.

## CONCLUSION

The Liability Reform Act prohibits contribution claims. This prohibition prevents NSI from maintaining any action against Norton which essentially amounts to a claim for contribution. We therefore affirm the trial court's summary judgment dismissing NSI's claims against Norton for reimbursement and indemnity. We also decline to recognize a cause of action for "comparative implied indemnity." ·

BILLINGS and JACKSON, JJ., concur.

However, if the trial court rules as a matter of law that a codefendant bears no liability, then the fact-finder does not consider that party when apportioning fault. *See Sullivan,* 853 P.2d at 883–84. In circumstances such as here—where one codefendant moves for summary judgment against the plaintiff on the basis that it bears no liability—any other defendant must file an apportionment cross-claim in order to have standing to oppose the other codefendant's motion. *See Packer,* 909 P.2d at 1278. Because, as discussed above, the Act prohibits such an apportionment claim from being brought outside the underlying tort action, the apportionment claim must be brought—if at all—as a cross-claim in the underlying suit or it is lost. Thus, the apportionment cross-claim is mandatory only in the sense that if it must be brought, it must be brought during the underlying tort action.