2004 UT App 203

**Barry SANNS, Plaintiff and Appellant,**

**v.**

**BUTTERFIELD FORD, a Utah corporation; Ford Motor Company, a Delaware corporation; and Does 1 through 30, Defendants and Appellee.**

**No. 20030497–CA.**

Court of Appeals of Utah.

June 17, 2004.

David R. Olsen and Paul M. Simmons, Dewsnup King & Olson, Salt Lake City, and Timothy J. Ryan, Timothy J Ryan & Associates, Huntington Beach, California, for Appellant.

Bryon J. Benevento, Brian C. Cheney, and David N. Wolf, Snell & Wilmer, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 Appellant Barry Sanns (Sanns) appeals the trial court's grant of Appellee Butterfield Ford's (Butterfield Ford) Renewed Motion for Summary Judgment. Sanns argues that there exists a genuine issue of material fact as to whether Butterfield Ford was negligent in selling a fifteen-passenger van to the State of Utah without adequately warning of the van's propensity to roll over when loaded. Sanns further argues that even if Butterfield Ford was not negligent in selling the van, the Utah Liability Reform Act (ULRA) nevertheless allows Butterfield Ford to be apportioned fault under the doctrine of strict liability. We affirm.

## BACKGROUND

¶ 2 On December 7, 2000, Sanns, a guard for the Utah Department of Corrections, was riding as a passenger in a 1999 Ford Econoline E–350 van when the van rolled several times, seriously injuring Sanns and other passengers. The van was designed and manufactured by Ford Motor Company (Ford) and delivered to Butterfield Ford. Butterfield Ford sold the van in June 1999, in a fleet sale, to the Utah Department of Corrections.

¶ 3 In June 2002, Sanns brought this action against Ford and Butterfield Ford asserting claims for strict liability, breach of warranty, and negligence.[1] Butterfield Ford moved for summary judgment and submitted an affidavit of its president, Brent E. Butterfield, in support of its motion. The trial court initially denied the motion for summary judgment and granted Sanns 240 days to conduct discovery in order to controvert the assertions in Mr. Butterfield's affidavit. After addition-

al discovery, including Sanns deposing Mr. Butterfield, Butterfield Ford renewed its motion for summary judgment. The trial court then granted Butterfield Ford's renewed motion for summary judgment. The court found that (i) Sanns failed to present any credible evidence to show that Butterfield Ford was anything but a passive distributor of the van; (ii) Butterfield Ford did not design, manufacture, test, assemble, package, alter, or ship the vehicle; (iii) the fact that Butterfield Ford acknowledged that a van has a higher center of gravity than a sports car does not create a genuine issue of material fact that the dealer knew of any design defects in the van; and (iv) the ULRA does not permit a cause of action for strict liability against a purely passive distributor where the fault complained of arises out of a design or manufacturing defect, and where the manufacturer/designer of the product is a named party in the action.

## ISSUES AND STANDARD OF REVIEW

¶ 4 When reviewing an appeal from a trial court's grant of summary judgment, we view the facts "in a light most favorable to the losing party below. And in determining whether those facts require, as a matter of law, the entry of judgment for the prevailing party below, we give no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness." *Penrose v. Ross*, 2003 UT App 157, ¶ 7, 71 P.3d 631.

¶ 5 The determination of whether a passive seller of a product can be held strictly liable under the ULRA is based on the trial court's interpretation of a statute, which we review for correctness without deference to the trial court's conclusions. *See A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 10, 977 P.2d 518.

## ANALYSIS

### I. Negligence

¶ 6 Sanns argues the trial court erred in granting Butterfield Ford summary

---

1. Sanns's action against Ford was removed to the United States District Court for the District of Utah where Ford is seeking to consolidate it with two other cases pending in the district court involving the same accident. At the time of this appeal, Sanns had filed a motion to remand the action back to state court.

judgment on Sanns's negligence claim because there existed genuine issues of material fact. "A genuine issue of fact exists where, on the basis of the facts in the record, reasonable minds could differ on whether defendant's conduct measures up to the required standard." *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982). Furthermore, "the mere existence of genuine issues of fact ... does not preclude the entry of summary judgment if those issues are immaterial to resolution of the case." *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 419 (Utah Ct.App.1994) (alteration in original) (quotations and citation omitted).

¶ 7 Sanns first asserts that there is an issue of material fact about whether Butterfield Ford knew or should have known of the alleged defective nature of the van. In support of this argument, Sanns presented Mr. Butterfield's deposition testimony where he stated in part:

> It has a high roof; therefore, a different center of gravity than a sports car. So obviously there is an awareness, for lack of a better term, that it handles differently than a Mustang Cobra....
>
> ....
>
> It's tall and square. It's bound to have different characteristics than the 911.

¶ 8 Butterfield Ford does not dispute that it knew that this van had a higher center of gravity and handled differently than passenger vehicles. This commonsense observation could be made by many people inside and outside of the automotive industry. Sanns has failed to explain how, with this recognition that most vans have a higher center of gravity than most cars, Butterfield Ford knew or should have known that this particular van model had a manufacturing defect

increasing the likelihood the van could roll over. The trial court was correct in concluding that this evidence is insufficient to demonstrate that Butterfield Ford knew or should have known of any alleged design defects in the van.[2]

■■ ¶ 9 Furthermore, when a party fails to produce evidence sufficient to meet one of the elements of a claim, " 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.' " *Burns*, 876 P.2d at 419–20 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (other quotations and citation omitted)); *see also Maack v. Resource Design & Constr.*, 875 P.2d 570, 578 (Utah Ct.App.1994) (affirming summary judgment because essential elements of theory were not established). A duty to warn a consumer of a defective product lies with a seller or manufacturer of a product "who knows or should know of a risk associated with its product." *House v. Armour of Am., Inc.*, 886 P.2d 542, 547 (Utah Ct.App.1994). The trial court found that Sanns "failed to present any credible evidence to show that Butterfield Ford was anything but a passive distributer of the vehicle in question." We agree. Butterfield Ford, as a passive retailer and not the van's manufacturer, did not owe a duty to its customers to warn them of a manufacturing defect that it did not know of itself. Furthermore, Sanns has provided no legal authority holding that the seller of a product, who does not know of nor should know of a defect in that product, nonetheless owes a duty of care to the purchaser.[3]

---

**2.** To further support his claim that Butterfield Ford knew or should have known of the rollover defect, Sanns introduced a National Highway Traffic Safety Administration research note issued in April 2001 and a National Transportation Safety Board safety recommendation issued in November 2002. Sanns argues that these reports somehow put Butterfield Ford on notice of the van defect. However, because both of these reports were written after the subject van was sold, they are irrelevant to the question of what Butterfield Ford knew or should have known at the time the van was sold.

**3.** Sanns cites *Schaerrer v. Stewart's Plaza Pharmacy*, 2003 UT 43, 79 P.3d 922, for the proposition that the seller of a defective product owes users of the product a duty of care. However, *Schaerrer* discussed whether a pharmaceutical manufacturer and pharmacist could be liable under strict products liability, not negligence. *See id.* at ¶ 15. Sanns additionally cites Restatement (Second) of Torts § 401 (1965). This section, however, actually supports the position of Butterfield Ford. It states that a seller of a product can be liable if it fails to inform of a product's danger when the seller "knows or has reason to know

¶ 10 The evidence presented by Sanns is insufficient to create an issue of material fact as to whether Butterfield Ford knew or should have known of the alleged defect in the van. Therefore, the trial court was correct when it granted summary judgment in favor of Butterfield Ford on Sanns's negligence claim.

## II. Strict Liability Under the Utah Liability Reform Act

■ ¶ 11 Sanns next challenges the trial court's determination that the ULRA, Utah Code Annotated sections 78–27–37 to –43 (2002 & Supp.2003),[4] "does not provide a cause of action for strict liability against a purely passive distributor where the fault complained of arises out of a design or manufacturing defect, and where the manufacturer/designer of the product is a named party to the action."

¶ 12 The ULRA states: "A person seeking recovery may recover from any defendant or group of defendants whose fault, combined with the fault of persons immune from suit, exceeds the fault of the person seeking recovery prior to any reallocation of fault made under Subsection 78–27–39(2)." Utah Code Ann. § 78–27–38(2) (2002). "Fault" is defined in the ULRA to include claims for strict liability and product liability. Specifically, "fault" is defined in the ULRA as

> any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a

product, products liability, and misuse, modification, or abuse of a product.

*Id.* § 78–27–37(2) (2002).

¶ 13 Prior to passage of the ULRA, and under the common law doctrine of joint and several liability, "a tortfeasor was potentially liable for the entire amount of a plaintiff's damages, irrespective of what proportion of fault was actually attributable to that individual tortfeasor as opposed to another joint tortfeasor." *National Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551, 554 (Utah Ct.App.1997). In 1986, the Utah Legislature enacted the ULRA, eliminating joint and several liability. *See id.* at 554–55. Specifically, the Act states, "the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant." Utah Code Ann. § 78–27–40(1) (2002).

■ ¶ 14 While the ULRA limits a party's liability to its proportion of fault, this does not prohibit a factfinder from assigning liability to a party under a claim for strict liability. *See S.H. ex rel. Robinson v. Bistryski*, 923 P.2d 1376, 1382–83 (Utah 1996) (using ULRA to apportion liability under Utah's strict liability dog bite statute and also a negligence theory). This is clearly indicated by the statute's inclusion of strict liability along with negligence, assumption of risk, breach of express or implied warranty of a product, and products liability as causes of action subject to the ULRA.[5] *See* Utah Code Ann. § 78–27–37(2).

¶ 15 Recognizing that under the ULRA, a party can be apportioned liability under a

---

that the [product] is, or is likely to be, dangerous." *Id.*

4. Although certain sections of the Utah Liability Reform Act have been amended since the accident occurred, the amendments do not affect the outcome of this case. Therefore, for ease of reference, we cite to the most recent version of the statutes.

5. The legislature's inclusion of "strict liability" in defining "fault" is confusing and somewhat problematic because unlike negligence, strict liability does not require an examination of a party's fault. Strict liability is "the breach of an *abso-*

*lute* duty to make something safe." Black's Law Dictionary 926 (7th ed.1999) (emphasis added); *see also* Floor Debate, remarks of Sen. Lyle Hillyard, 46th Utah Leg., Gen. Sess. (February 12, 1986) (Sen. CD No. 63, 6) (during debate on the passage of the ULRA, Senator Hillyard expressed his concern with the use of the terms "strict liability" and "breach of warranty" in defining fault). The use of strict liability in this statutory definition should be viewed only as a cause of action subject to the ULRA, rather than changing the traditional use of the term fault to somehow include strict liability, a liability concept that is unconcerned with fault in the usual sense of culpability.

strict liability cause of action, *see id.,* we next address the ULRA's effect on strict liability claims against multiple tortfeasors; in this case, both a product's seller and its manufacturer. Sanns correctly argues that under general tort law principles, as between an injured buyer of a product, and the seller of the product, the seller must bear the liability. *See Schaerrer v. Stewart's Plaza Pharmacy,* 2003 UT 43,¶ 16, 79 P.3d 922; *see also* Restatement (Second) of Torts § 402A (1965). However, when the product's manufacturer is also named in the suit, this traditional principle conflicts with the clear language and intent of the ULRA, which states that "[n]o defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant under Section 78–27–39." Utah Code Ann. § 78–27–38(3).

¶ 16 Some states have addressed this conflict of apportioning strict liability fault among joint tortfeasors by explicitly prohibiting strict liability and other causes of action against passive sellers unless the product manufacturer is unreachable or unable to satisfy the judgment. *See, e.g.,* Idaho Code § [6–1407] 6–1307(4)(a), (b) (2004) (stating seller liable if manufacturer is not subject to service of process, or is insolvent); 735 Ill. Comp. Stat. 5/2–621(b)(1) (2004) (allowing for dismissal of nonmanufacturer defendant from strict liability product claim upon its certifying correct identity of manufacturer of allegedly defective product); Kan. Stat. Ann. § 60–3306(d), (e) (2003) (seller not liable if not manufacturer, manufacturer is subject to service of process, or if reasonably certain that judgment against manufacturer would be satisfied); Wash. Rev.Code § 7.72.040(2)(a), (b) (2004) (same). One court explained that the purpose of the Illinois statute "is to allow a nonmanufacturing defendant, who has not been shown to have created or contributed to the alleged defect, to defer liability upstream to the ultimate wrongdoer, the manufacturer." *Saieva v. Budget Rent–A–Car of Rockford,* 227 Ill. App.3d 519, 169 Ill.Dec. 334, 591 N.E.2d 507, 511 (1992). Utah law, without such an explicit statutory exclusion, is not as clear as to the apportionment of liability between a passive product seller and the manufacturer.

We therefore further examine the ULRA to determine if it is, despite its ambiguity, in consonance with the other states' statutes.

¶ 17 The requirements of the ULRA encourage the inclusion of all defendants either party believes may be at "fault" as defined in the Act. Under the ULRA, a plaintiff or defendant *may* join any other party who "may have caused or contributed to the injury or damage for which recovery is sought, for the purpose of having determined their respective proportions of fault." Utah Code Ann. § 78–27–41(1) (2002). In fact, defendants who seek to allocate fault to other defendants *must* identify in their answers those persons who may be at fault. *See id.* § 78–27–41(4). Therefore, in cases where strict liability is alleged, all other available defendant tortfeasors should be joined and identified in order to apportion fault properly in the case.

¶ 18 The ULRA, and its elimination of joint and several liability, does not eradicate the need to compare fault between a defendant who is strictly liable, and a codefendant who is negligent. *See Bistryski,* 923 P.2d at 1380, 1382–83 (comparing fault under the ULRA between a strictly liable defendant and a negligent codefendant); *see also Red Flame, Inc. v. Martinez,* 2000 UT 22,¶ 10, 996 P.2d 540 (holding that the ULRA applies to the strict liability of the Dramshop Liability Act). In debating its passage, Senator Lyle Hillyard raised a question on the Senate floor about the legal effect of the statute stating, in part, "I could see liability being found against [a party] on strict liability with absolutely nothing to do with fault because of public policy reasons." Floor Debate, remarks of Sen. Lyle Hillyard, 46th Utah Leg., Gen. Sess. (February 12, 1986) (Sen. CD No. 63, 6). In response, Steve Sorenson, Assistant Attorney General, stated:

What it says is if you have multiple defendants, one of whom is guilty of negligence, one of whom is guilty of strict liability, the jury in apportioning fault, apportions fault between those parties regardless of the theory on which the party is liable.... [I]f you have differen[t] defendants guilty on

different theories of liability, nonetheless that's all considered fault for the purpose of apportioning damages by the jury.

*Id.* (remarks by Assistant Attorney General Steve Sorenson).

¶ 19 Sanns argues that in this case, it is appropriate to assert a strict liability claim against both a retailer and a manufacturer because "to the extent the retailer is held liable for the harm caused by the defective product, it may have a claim for indemnity against the manufacturer." This argument is unpersuasive and inconsistent with prior interpretations of the ULRA. The similar doctrines of indemnity and contribution both "attempt to ensure that parties are not held unfairly liable to an extent greater than their degree of fault." *National Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551, 554 (Utah Ct.App.1997).[6] This was the specific legislative intent in passing the ULRA. *See Sullivan v. Scoular Grain Co.*, 853 P.2d 877, 880 (Utah 1993) (quoting one senator, before passage of the ULRA, saying " 'it is the basic fairness concept we're driving at. The defendant ought to be on the hook only for its own percentage of damages, but ought not be the guarantor for everyone else's damages.' ").

¶ 20 Furthermore, the ULRA expressly bans suits for contribution. *See National Svc. Indus. Inc.*, 937 P.2d at 555; *see also* Utah Code Ann. § 78–27–40(2) (stating defendant is not entitled to contribution from any other person).[7] Finally, in *National Service Industries*, this court held that a party should not attempt to bring a subsequent suit which in effect seeks either contribution or indemnification because after the passage of the ULRA, "there remains no need for suits to redistribute loss among joint tortfeasors because no party will in any case be liable for more than its degree of fault in the underly-

ing tort action." *National Serv. Indus.*, 937 P.2d at 555. Therefore, based on the language of the ULRA, the legislative history of the Act, and subsequent case law, with the elimination of joint and several liability, it is clear that fault can no longer be apportioned to one defendant with the idea that it may later seek indemnification or contribution from another.

¶ 21 Turning to the specific facts of this case, Sanns seeks to hold both Butterfield Ford and Ford strictly liable for manufacturing and design defects in the van. The trial court found, and we have affirmed, that Butterfield Ford was merely a passive retailer with no knowledge of any design or manufacturing defects. It is undisputed that Butterfield Ford did not participate in the design, manufacture, engineering, testing, or assembly of the van. All of this work was performed by Ford, the manufacturer and a codefendant. The strict liability "fault" in this case, if any, lies with the manufacturer, not with Butterfield Ford, the passive retailer. The ULRA eliminated all aspects of joint and several liability, *see id.* at 554, which means strict liability cannot be apportioned to Butterfield Ford, a passive seller, and also to Ford. Further, if Butterfield Ford were imposed with some or all of the fault actually belonging to Ford, Butterfield Ford no longer has the option of seeking indemnification or contribution from Ford in a subsequent suit. Therefore, as long as Ford is present in the suit, there remains no reason to require Butterfield Ford to incur the time and expense of defending this action, and consequently the trial court was correct to dismiss Butterfield Ford.

## CONCLUSION

¶ 22 The trial court was correct when it concluded that Sanns did not present any

---

6. In *National Serv. Indus. v. B.W. Norton Mfg. Co.*, 937 P.2d 551 (Utah Ct.App.1997), this court defined "contribution" as "a method for tortfeasors forced to pay damages greater than their proportion of fault to recover from other joint tortfeasors in a separate action." *Id.* at 554. The court also described "indemnity" as "a doctrine which requires another to reimburse *in full* one who has discharged a common liability." *Id.* (quotations and citations omitted).

7. While Utah Code Annotated section 78–27–40(2) (2002) prohibits suits for contribution, Utah Code Annotated section 78–27–43 (2002) recognizes a right to indemnity and contribution based on statute, contract, or agreement. This case does not present any of these situations.

credible evidence establishing a genuine issue of material fact related to Butterfield Ford's negligence. Mr. Butterfield's comments about the van's center of gravity are insufficient to demonstrate that Butterfield knew or should have known of the alleged rollover defect in the van. Thus, Sanns has not shown that Butterfield Ford breached its duty to warn its customers of any defects in the subject van of which it knew or should have known. The trial court also correctly concluded that the ULRA precludes a strict liability claim against the van's seller, Butterfield Ford, when the van's manufacturer, Ford, is named in the suit, and when there is no evidence that the seller knew of or contributed in any way to the van's defective condition. Thus, we affirm the trial court's order granting Butterfield Ford's renewed motion for summary judgment.

¶ 23 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and GREGORY K. ORME, Judge.